## Parker, Administrator, Appellant, *v.* the Administrator of Amos Whiting.

An estate of a deceased person may be reported insolvent after the expiration of nine months from the grant of letters of administration; and, it seems, at any time before the expiration of the period limited by statute for the presentation of claims against the estate.

Where an estate is regularly reported insolvent, a court from which an execution issued against an estate, may grant a stay of process.

It was held not to be error in a judge of the circuit court, to refuse to hear evidence to prove that an administrator of an estate had improperly reported it insolvent.

The action of the probate court upon a report of the insolvency of an estate, cannot be collaterally impeached.

APPEAL from the Circuit Court of the county of Claiborne.

The appellant, at May term, 1840, of the circuit court of Claiborne county, recovered a judgment against the appellees as administrators on the estate of Amos Whiting, deceased, and sued out an execution thereon, returnable to November term, 1840, which it seems was levied on negroes, but no sale took place. The execution returnable to May term, 1841, was superceded on the application of the appellees, on the ground that the estate of Whiting, at the March term, 1841, of the probate court of Claiborne county, had been reported insolvent, and commissioners appointed to audit claims against it. At the return term of the execution, a motion was made to stay all further proceedings on the judgment, which, on the application of appellant's counsel, was continued until the next term, and at November term, 1841, the motion to stay proceedings, and the cross motion to discharge the supercedeas, came on to be heard, and the court ordered that further proceedings on the judgment be stayed in consequence of the insolvency of Whiting's estate; from which decision this appeal was taken, on a bill of exceptions tendered, by which it seems

Parker, Administrator, Appellant, *v.* The Administrator of Amos Whiting.

that the report of insolvency was received and approved by the probate court, and also that the appellants resisted the stay of proceedings on the ground that administration on Whiting's estate had been granted in August, 1837, and also offered to introduce the account of the administrators which had been reported to the probate court, for the purpose of shewing that the administrators had expended large sums of money for purposes other than the payment of debts, which account constitutes a part of the bill of exceptions. The appellants also offered to prove by witnesses, that the administrators had carried on the plantation of Whiting for several years, and had received the proceeds, and had received rents for other real estate; that Whiting, at his death, owned considerable real and personal estate; that since the grant of administration, the administrators had permitted an execution to be levied on a number of the negroes, and that one of the administrators at the sale became the purchaser, and now held them in his own right. All this testimony the court refused to hear.

On this state of facts the appellant has assigned for error, first, that the court erred in staying proceedings on the judgment on the ground of insolvency; second, that the court erred in ruling out the evidence offered by the appellant; and third, that the judge erred in granting the original supercedeas, without requiring security.

Thrasher, for appellant.

In the case at bar, it is contended for the appellant, that the judgment rendered in his favor at the May term, 1840, of the Claiborne circuit court, against the administrators of Amos Whiting, for $1,313 65, constitutes a lien on the property of the deceased, which cannot be destroyed, raised, or suspended by the subsequent report of insolvency.

It is conceived that a careful analysis of the statutes on the subject will fully demonstrate the foregoing proposition. The statute respecting insolvent estates of decedents was passed in 1821. By that statute, six months was allowed the administrator for the purpose of ascertaining whether the estate was solvent or insolvent. The language of the statute is as follows: "And to the end that the executor or administrator may have an opportunity to ascer-

tain the situation of the estate of the testator or intestate, no suit or action shall be commenced or sustained against such executor or administrator, in such capacity, till after the expiration of six months from the time of proving the will of the testator, or of granting letters of administration on the estate of the deceased, nor shall any action or suit be commenced or sustained against him after the estate of the testator or intestate be represented insolvent, excepting, &c." H. & H. 410. By an act passed in 1826, the time of six months was extended to nine. See Laws of Mississippi, 101, sec. 1. On granting of letters testamentary or of administration it is made the duty of executors, administrators and collectors, within two months, to publish in some newspaper printed in the state a notice requiring all persons having claims against the estate of their testator or intestate to exhibit the same within the time limited by law, or the same will be barred. This time limited by law is eighteen months for resident creditors and three years for non-resident creditors, within which time they shall exhibit their claims, or the same are to be barred. From the foregoing legislation, it is obvious that it is the duty of the executor or administrator to report the estate insolvent within nine months, if such be the fact, and the law does not contemplate a report of insolvency after that time.

No creditor can sue until after the expiration of the nine months. This prohibition is for the special purpose of affording the executor or administrator an opportunity to ascertain whether the estate be solvent or insolvent. First, then, no suit shall be brought until after the expiration of the nine months. Second, no suit shall be brought after the estate is reported insolvent. Third, in case any suit shall be pending at the time the estate is reported insolvent, it shall not abate or be dismissed; but no execution shall issue on the judgment; it is to be filed as a claim against the estate. How. & Hut. 415. The judgment of the appellant does not fall within either of the foregoing provisions; letters of administration were granted on Whiting's estate in August, 1837. The suit was brought and judgment obtained to the May term, 1840, and the estate reported insolvent in March, 1841. *Suit was therefore not brought after the report of insolvency, nor was it pending at the time the estate was reported insolvent.* No statute prevented

the plaintiff from suing out his execution, which emanated on a judgment rendered ten months before the estate was reported insolvent.

This judgment was rendered according to law, after the expiration of nine months and ten months before the estate was reported insolvent; and there is no law which prohibits execution on it.— The judgment which was rendered without restriction, was a lien upon all the property of Whiting within this state, from the time of entering the judgment. How. & Hut. 621, sec. 43. Will it be contended therefore that an illegal and subsequent representation of insolvency, doubtless intended to hinder and delay creditors, by administrators who, the record show, have been cropping and expending the money for near four years, raises the lien of the judgment? The statute certainly authorizes no such assumption, but on the contrary by guarding that upon judgments rendered after an estate is reported insolvent, that no execution shall issue, (and consequently no judgment lien attach,) indicates most clearly that the judgments rendered before the report of insolvency and after the expiration of nine months, are to be liens on the property of the deceased. The record shows an illegal report of insolvency, and illegal and unusual management of the estate throughout.— There is no evidence that the estate was insolvent, or that it was so declared by the court. The order of the court on the fourth page of the record was, that the report of the assets and liabilities by the administrators, showing said estate insolvent, be received and recorded.

No order to sell the land or personal property was made; no land or personal property had been sold, though over four years had elapsed since the grant of administration, during which time the administrators had been in receipt of large rents of real estate, and working a plantation and a large number of slaves, and expending the money for other purposes than paying the debts of the deceased, and in the mean time that a large number of the slaves of the deceased became the private property of one of the administrators, and of course were not estimated in the attempted report of insolvency—at least such was the evidence offered and ruled out by the court, which authorizes the appellant to consider it as though it had been proved.

The execution had been levied on the slaves of the deceased, and the property advertised for sale, at the time of granting the supersedeas, as the appellees show in their petition. As the judgment had therefore been legally rendered, and the execution properly issued, it is contended that the judgment, when rendered, was a valid lien on all the property of the deceased, under the act of 1824, and that no subsequent act of the administrators could suspend it.

In the case of Rankin *v.* Schatzell, 12 Wheat. 177, Judge Marshall says, "that the principle is believed to be universal that a prior lien gives a prior claim, which is entitled to prior satisfaction out of the subject it binds, unless it be intrinsically defective, or be displaced by some act of the party holding it; the judgment is notice of the prior lien." And in the case of Canard *v.* The Atlantic Insurance Company, 1 Pet. 387, the court say, "that it is not understood that a general lien by judgment on lands constitute *per se* a property or right in the land itself; it only confers a right to levy on the same to the exclusion of other adverse interests, subsequent to the judgment; and when the levy is actually made on the same, *the title of the creditor relates back to the time of the judgment, so as to cut out intermediate incumbrances.*

Ellett for appellee.

The statute provides that where the estate of any person deceased is insolvent, "the said estate, both real and personal, shall be distributed to and among *all the creditors*, in proportion to the sums to them respectively due and owing," excepting only debts due for the last sickness and funeral expenses. How. & Hutch. 409, sec. 80.

The same section further provides, "nor shall any action or suit be commenced *or sustained* against him, after the estate of the testator or intestate be represented insolvent," except by his consent.

The 98th section of same act, p. 415, provides that if any suit is pending at the time the intestate is represented insolvent, such suit may proceed to trial and judgment; but no execution shall issue

Parker, Administrator, Appellant, *v.* the Administrator of Amos Whiting.

on such judgment, which is to be presented as a claim against the estate.

The precise case of a suit brought and judgment recovered against the administrators, before the estate is declared insolvent, is not expressly provided for, but is clearly within a fair and reasonable interpretation of the statute.

The policy of the act is to secure a ratable distribution of insolvent estates among all the creditors, and this policy would be entirely defeated by suffering a creditor, who has hurried his claim into judgment, to absorb the whole of it.    Vigilance is generally favored, but never at the expense of the settled policy of the law. Running an execution is, within a liberal construction of the act, the *"sustaining an action"* against the administrator; and this is forbidden expressly.    The act is in favor of creditors, and therefore entitled to a favorable construction.

The order to stay further execution at law was the appropriate method to compel the creditor in this case to stay his hand.

As to the testimony that was rejected.    This was offered to show, 1. that the probate court came to an erroneous conclusion upon the facts; or, 2. that the insolvency of the estate was produced by the waste and misconduct of the administrators.    In either aspect it was incompetent.

First.  The judgment of the probate court, being a court of competent jurisdiction, was conclusive, and could not be impeached in a collateral way.

Second.  It was no matter how the insolvency of the estate was produced.    The question before the probate court was, whether it was insolvent *at the time it was so represented.*

If the administrators have been guilty of a *devastavit*, the evidence would be competent in a proceeding against them to charge them personally with the debt; but the facts alleged (which, however, are by no means admitted to be true,) form no reason for permitting a single creditor to come in and sweep away from the others all the remnant of the estate.

Administrators, in this state, are not chargeable beyond the assets that come to their hands; but to that extent they are certainly personally liable to the creditors.    How. & Hutch. 396, sec. 38.

As to the third point.   The judge omitted to require security on granting the supersedeas, on the ground that executors and administrators are not required by law to give bond in such cases.

This position is believed to be correct; but it is not necessary to discuss it here—for a party cannot appeal from the acts of a judge done out of court in vacation.   But waiving this point, and the plaintiff in error must still fail.   The supersedas is not in force, and there is nothing to relieve from.   It applied only to that particular execution, and its operation expired with the return day of the writ, or has been entirely superseded by the subsequent action of the court.

An error in granting the original supersedeas can be no ground for setting aside the relief subsequently granted, when the cause came regularly before the court.

Mr. Chief Justice Sharkey stated the case, and delivered the opinion of the court.

The counsel for the appellant insists that according to a fair interpretation of the statutes, an administrator cannot report an estate insolvent after the expiration of nine months, that being the period within which an administrator cannot be sued, and that this length of time is allowed in order to enable him to ascertain the condition of the estate.   That this suit having been brought long after the expiration of the term of nine months after the grant of administration, the judgment became a lien on all the property of the estate and cannot be defeated.

The provision of the statute which has a direct bearing on the question is that part of sec. 103, Revised Code 58, which declares that no suit or action shall be commenced or sustained against the administrator after the estate is reported insolvent, except for debts due for the last sickness and funeral expenses.   By the first section of an amendatory act, Revised Code 70, it is provided that in case a suit be pending against an administrator at the time the estate is reported insolvent, the same shall not abate or be dismissed in consequence of the insolvency, but may be prosecuted to judgment, but no execution can issue on the judgment, but the same may be filed as evidence of a debt against the insolvent estate.   There is

no direct provision as to judgments recovered before the report of insolvency, and yet it must be manifest that such a case falls within the spirit of the statutes, so as to prevent the plaintiff from making his judgment effectual by having it executed after a report of insolvency. To prosecute his execution is in effect to prosecute a suit. If then an estate is reported insolvent after judgment and before execution executed, it is competent for the court from which the execution emanated to stay the execution, in the same manner that it would stay an execution in a suit brought before and judgment recovered after insolvency under the last mentioned act. The judgment lien is then held in abeyance, or must give way to the general and equal lien of all the creditors, for they all become equally entitled to their respective shares of the proceeds, the moment an estate is reported insolvent.

The question then arises, is the report of insolvency in the present case conclusive on the judgment creditor, or may he proceed notwithstanding to have his judgment satisfied. On this branch of the subject it is contended that the court should have heard the proof which was offered to show that the report of insolvency was improperly made. The application to introduce this proof was made on a summary proceeding by motion, which was to be decided by the court. The court was to decide on the sufficiency of the evidence, and as it was refused to be heard, we must infer that if it had been heard the judgment would not have been different. The court was advised of the facts intended to be proved, and the object of proving them. We can not therefore say that it was error to reject the testimony, as we might if it had been offered for the consideration of the jury. But we may consider the case as though the testimony had been received, and then it must turn on the propriety of the judgment on the facts set out in the bill of exceptions, and this involves the inquiry at what time an estate may be reported insolvent and the effect of such report.

From a part of the first section referred to it is manifest that the administrator was exempted from suits for a given time, in order that he might ascertain whether the estate was insolvent or not, and in good faith he should make such a report as soon as he can ascertain the fact; but there are other provisions of the law which

have a material bearing on his duty and powers in this particular. The administrator is to judge of the solvency of the estate by comparing its probable value to the amount of claims legally presented. Creditors within the state have eighteen months allowed them to present their claims; foreign creditors have three years. It is therefore often impossible for an administrator to ascertain the true condition of an estate until the expiration of the time allowed for presenting claims; hence we cannot say that the administrator is absolutely required to make his report sooner. At the expiration of that time however, an administrator is bound in general to know the condition of an estate, and ought not in ordinary cases to be allowed afterwards to be permitted to say that it was insolvent. Such a report at a later period is, to say the least of it, a very suspicious circumstance.

But it was proper that an objection to such a report should have been made before the probate court, either by a party interested or by the court itself. The report in this case, although made subsequent to the time allowed by law, was received by the court and commissioners appointed to audit claims. This was equivalent to a judgment or recognition of insolvency, and it may be that the peculiar circumstances of the case justified this course, yet it is improbable that they did. The evident tendency of the proof before us is to show that the estate was improperly reported insolvent, and still there may have been other facts before the probate court. The account which is made a part of the bill of exceptions is not altogether intelligible. The items may all refer to sums of money due by the intestate. If they do not, explanatory proof would be necessary. The profits of the plantation and the rents may have been properly applied. Permitting a part of the property to be sold under execution, and the purchase of it by one of the administrators on his individual account was a circumstance which might be proper evidence in showing a devastavit. But we cannot undertake to say that any of the proof offered is of itself sufficient to show fraud in reporting the estate insolvent. It is not contended that it was fraudulently made, and in the absence of fraud we must regard the report and the action of the probate court as conclusive in this collateral inquiry. The estate now stands as an insolvent

Parker, Administrator, Appellant, *v.* the Administrator of Amos Whiting.

estate, and as such the creditors are entitled to a *pro rata* distribution. If the insolvency has been brought about by mal-administration, the remedy is for a devastavit; and if the report of insolvency has been improperly made, it must be attacked directly.

The last error assigned is one that is not now open for discussion. The order granting the supersedeas without security, was not such an act as can be assigned as error, but if it were so, the question does not here arise. The judgment of the court was given on the motion made in court to stay the execution, and this judgment is the only thing before us.

The judgment must be affirmed.